Peelle, Ch. J.,
delivered the opinion of the court:
The question for decision arises on the Government’s demurrer to the petition on the ground that the facts averred are insufficient in law to constitute a cause of action.
The material averments are that the claimant, a corporation of the State of Delaware, with its principal office for the transaction of business in the city of Baltimore, Md., entered into a contract with the Government August 15, 1908, agreeing “ to excavate or otherwise construct a channel 10 feet deep at mean low water from Beaufort Inlet to Pamlico Sound, N. C., through Adams and Core Creeks, N. C., and through the intervening dry land (between the heads of these creeks) along lines to be laid out by said party of the first part ” of approximately 3,600,000 cubic yards, more or less, at the price of lOf- cents per cubic yard “ place measurement for all material excavated in conformity with the attached specifications,” the work to be divided into two divisions (A and B).
The work was to be commenced within 45 days from the date of the notification of the approval of the contract by the Chief of Engineers (which was September 14, 1908) *559 and was to be completed within 18 months thereafter, or on or before March 14, 1910.
Pursuant to the terms of the contract, the claimant entered upon the performance thereof and completed the work assigned, to division A on June 25, 1910, and to division B November 15, 1910. The work so completed was accepted by the Government, and the claimant was paid therefor March 2,1911. But in making payment the Government deducted for the aforesaid delay the sum of $7,530.50 (including $210.50 as the cost of superintendence and inspection during the period of delay) as liquidated damages under paragraph 5 of the contract, which reads:
“ It is further expressly understood and agreed that time shall be considered as an essential feature of this contract, and that in case of the failure upon the part of the party of the second part to complete this contract within the time as specified and agreed upon that the party of the first part will be damaged thereby, and the amount of said damages being difficult, if not impossible, of definite ascertainment and proof, it is hereby agreed that the amount of said damages shall be estimated, agreed upon, liquidated, and fixed in advance, and they are hereby agreed upon, liquidated, and fixed at the sum of twenty dollars ($20) for each division for each and every day the party of the second part shall delay in the completion of this contract, and the party of the second part hereby agrees to pay to the United States as liquidated damages, and not by way of penalty, the sum of twenty dollars ($20) for each division for each and every day the party of the second part shall delay in the completion of this contract, said delay not being the fault of the party of the first part.
“ It is further understood and agreed that the United States shall also have the right to recover from the party of the second part all costs of inspection and superintendence incurred by the United States during the period of delay, and also a reasonable value of any labor and materials which may be furnished by the party of the first part to the party of the second part during the time the latter is proceeding under this contract. And the party of the first part may deduct or retain all of the above-mentioned sums out of or from any money or reserved percentage that may be due or become due the party of the second part under this agreement.
“ Provided, however, That if the party of the second part shall by strikes, epidemics, local or State quarantine restric *560 tions, or by abnormal force or violence of tbe elements, be actually prevented from completing the work or delivering the materials at the time agreed upon in this contract, and such delay is without contributory negligence on his or their part, such additional time may, with the prior sanction of the Chief of Engineers, be allowed him or them, in writing, for such completion as, in the judgment of the party of the first part, or his successor, shall be just and reasonable; but such allowance or extension shall in no manner affect the rights or obligations of the parties under this contract, but the same shall subsist, take effect, and be enforceable precisely as if the new date for such commencement or completion had been the date originally herein agreed upon.”
The claimant’s contention is, and it so avers, that the deduction as liquidated damages was illegal and unreasonable, because the delay was caused by “ extraordinary and unforeseeable conditions,” against which, it contends, provision was made by paragraph 16 of the specifications, which reads:
“ 16. The time allowed in these specifications for the completion of the contract to be entered into is considered sufficient for such completion by a contractor having the necessary plant, capital, and experience, unless extraordinary and unforeseeable conditions supervene.”
In the prosecution of the work the claimant encountered submerged stumps, roots, branches, and timbers, which it avers and contends were “ extraordinary and unforeseeable conditions,” thereby causing the delay for which the deduction was made.
Paragraph 22 of the specifications provides:
“ 22. Character oe Material. — The material is believed to be soft mud, sand, clay, shell, and silt. Each bidder, however, is expected to examine and decide for himself, as no allowance will be made should any of it prove to be otherwise than as stated, except that solid rock, large bowlders, and compact gravel will not have to be removed at the prices bid for ordinary excavation. If such materials should be encountered their removal, if required by the engineer, will be done under special agreement and paid for as extra work, as provided for in the form of contract to be entered into.”
Under this provision the claimant was bound to examine and determine for itself the character of the materials to *561 be excavated, and the presumption is that its bid was based on the conditions found. That it did not find the stumps, roots, branches, and timbers characterized as “ a sunken or submerged forest” was no fault of the Government; and assuming that the claimant, as it was required to do, made diligent examination to ascertain the character of materials to be excavated, still its failure to find such submerged forest was in no way the fault of the Government.
Furthermore, by the last clause or sentence of paragraph 7 of the specifications it is provided that “ no allowance will «be made for the failure of a bidder or of the contractor to estimate correctly the difficulties attending the execution of the work.” Here in express terms the claimant was informed before making its bid that no allowance would be made for difficulties attending the execution of the work which it failed to correctly estimate.
The question, therefore, is whether under the contract the difficulties encountered can be held to excuse the claimant for the delay.
Paragraph 24 of the specifications provides :•
“24. Clearing. — All trees growing in the area to be excavated and within 25 feet of the banks of the excavation will be removed by the contractor. The contractor shall have the right to use timber so cut in such accessory works as he may deem desirable. The channel must be cleared of all snags, logs, roots, stumps, or wreckage that project into or encroach in any way upon the cross section, as indicated in paragraph 27, the cost of same being included in the unit-price bid for excavation.”
Paragraph 27 of the specifications therein referred to provides:
“ 27. Excavation — Dredges or other appliances will work on lines and in positions laid out by the engineer. Care must be taken to leave a reasonably even bottom at the depth required and a close approximation to the required side slopes. The contractor will be required to go over his work, if necessary, to produce this result.”
These paragraphs would seem to imply that snags, logs, roots, stumps, or wreckage might be encountered, and that if they encroached in any way on the cross section they were *562 to be cleared, “ the cost of the same being included in the unit-price bid for excavation.”
Paragraph 22 provides the character of the materials Relieved to exist, but leaves it to each bidder to determine for himself, “ as no allowance will be made should any of it prove to be otherwise than as stated, except that solid rock, large bowlders, and compact gravel will not have to be removed at the prices bid for ordinary excavation,” and that if encountered and their removal should be required by the engineer the same “ will be done under special agreement and paid for as extra work, as provided for in the form of contract to be entered into.” Here provision is made against solid rock, large bowlders, and compact gravel, but nothing is said about submerged stumps, roots, branches, and timbers, nor are they referred to except in paragraph 24 aforesaid.
Paragraph 16 is a mere statement for the information of bidders as to what was considered a sufficient time within which to complete the work by a contractor having the necessary plant unless hindered by “ extraordinary and unforeseeable conditions.” Not that such conditions, unless otherwise provided for, should operate to excuse a contractor from performance or to relieve him from the difficulties encountered in performance. If the paragraph is to be considered other than as information to bidders then it must be in connection with the proviso to paragraph 5 of the contract, which is the last expression of the parties; that is to say, such extraordinary and unforeseeable conditions as were provided against in the proviso to paragraph 5 of the contract, viz, “ strikes, epidemics, local or State quarantine restrictions, or by abnormal force or violence of the elements,” in which case e£ the claimant be without contributory negligence. “ such additional time may, with the prior sanction of the Chief of Engineers, be allowed him or them, in writing, for such completion as, in the judgment of the party of the first part, or his successor, shall be just and reasonable.”
To ascertain the meaning of the words “ extraordinary ” and “unforeseeable,” as applied to conditions, it is hardly necessary to go beyond the words themselves. However, when a condition is not common, or is beyond the ordinary, lexicographers class it as “extraordinary,” while an “un *563 foreseeable ” condition they class as “ incapable of being foreseen.” But, for the reasons already stated, the definitions do not aid the claimant, as the work was not hindered by way of any of the causes mentioned in the contract. If it had been and additional time had been allowed the deduction complained of would not have been made. The obstructions encountered were such as might, under the specifications, have been expected; but whether so or not the Government can not be charged with the loss resulting from the claimant’s failure “ to estimate correctly the difficulties attending the execution of the work.” The difficulties encountered in performance were a part of the consideration, and hence assumed by the claimant.
It results that the deduction complained of was in accordance with the contract, and the demurrer is therefore sustained and the petition dismissed.
Howry, J., was not present when this case was heard and took no part in its decision.